UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RUBY F. ADAMS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 1:06-CV-393 RM |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Ruby Adams Sydow seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq.*. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). For the reasons that follow, the court REVERSES the final decision of the Commissioner of Health and Human Services and REMANDS the matter for rehearing.

BACKGROUND

Ms. Adams asserted disability as of January 3, 2003 due to depression and anxiety. Her applications for benefits were denied initially, on reconsideration, and after an administrative hearing at which counsel represented her.

At the hearing, the ALJ received evidence documenting Ms. Adams' medical conditions and heard testimony from Ms. Adams, her brother Randall Cox, and Robert Barkhaus, Ph.D., a vocational expert. Using the agency's standard

sequential five-step analysis, 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found that Ms. Adams had severe physical and mental impairments, including chronic obstructive pulmonary disease, post traumatic stress disorder, and adjustment disorder; that her impairments didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1 (specifically Sections 3.02, 12.04, 12.06 and 12.08); and that Ms. Adams retained the residual functional capacity to perform work activity that was limited to simple repetitive tasks and didn't involve exposure to fumes, dusts, odors, gases and poor ventilation or concentrated exposure to extreme cold, heat, wetness and humidity. Relying on the vocational expert's testimony, the ALJ found that Ms. Adams could perform her past relevant work as a caregiver, and other jobs that existed in significant numbers in the national economy, including sales attendant, cafeteria attendant, and laundry folder. The ALJ concluded that Ms. Adams wasn't disabled and wasn't entitled to benefits.

The Appeals Council considered additional evidence, including a June 8, 2006 mental residual functional questionnaire completed by Dr. Dennis Ugboma, a psychiatrist at Grant-Blackford Mental Health Clinic. The Council found that Dr. Ugboma's assessment didn't provide a basis for changing the ALJ's decision, and denied Ms. Adams' request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008); Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed.

## STANDARD OF REVIEW

The issue for the court isn't whether Ms. Adams is disabled, but whether substantial evidence and the law supports the ALJ's determination that she was not. Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). If so, the court must affirm the Commissioner's decision. Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007); Rice v. Barnhart, 384 F.3d 363, 368-369 (7th Cir. 2004); Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). The substantial evidence standard prevents the court from "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility" — in short, substituting its own judgment for that of the Commissioner, Williams v. Apfel, 179 F.3d 1066, 1071-1072 (7th Cir. 1999); *accord* Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000) — and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

## DISCUSSION

Relying solely on the medical opinions offered by the state agency psychologists, Drs. Shipley and Gange, the ALJ found that Ms. Adams experienced moderate limitations in activities of daily living, mild difficulties in maintaining social functioning, and mild deficiencies of concentration, persistence, or pace; that there were no documented repeated episodes of decompensation; and that there was no indication that she was unable to function independently outside the

3

area of her home. He concluded that her mental impairments (affective disorder and anxiety disorder) didn't meet the requirements of Listings 12.04 and 12.06; that she retained the residual functional capacity to perform simple repetitive tasks; and that "[t]here [was] no medical opinion to support limitations greater than those contained in the residual functional capacity [finding]."

Ms. Adams contends the ALJ's findings with respect to the severity of her mental impairments and her residual functional capacity are not supported by substantial evidence.[1] She contends that he ignored material evidence of her mental health, including the opinions of her psychiatrists, Drs. H.W. Briselmeyer, Trula Thompson and Marco Baquero, and examining psychologist Robert B. Fisher, Ph.D, and treatment notes from Grant-Blackford Mental Health Clinic, and erroneously relied on the opinions of non-examining state agency psychologists who didn't have the benefit of those records when they issued their opinion. Ms. Adams maintains that her mental impairment met or equaled Listing 12.04 (affective disorders), and that even if it didn't, it is "unfathomable" to believe that she has retained the ability to work on a sustained basis after January 2003. As additional grounds for remand, Ms. Adams cites the ALJ's alleged failure to obtain an updated medical expert opinion on medical equivalency as required by S.S.R. 96-6p, and to consider the side effects of her medications.

---

[1] Ms. Adams alleged disability as a result of both physical and mental impairments at the hearing, but only challenges the ALJ's findings with respect to her mental impairments on appeal.

The Commissioner concedes that the ALJ didn't address the opinions offered by Dr. Briselmeyer, Dr. Thompson, and Dr. Fisher, but contends that their opinions weren't entitled to controlling weight because they weren't treating physicians, *citing* White v. Barnhart, 415 F.3d 6544, 658 (7th Cir. 2005), and that the omission was harmless error because the opinions wouldn't have led the ALJ to reach a different conclusion. The court disagrees.

What weight the evidence was entitled to and whether it would have changed the outcome are matters that should have been, but were not, decided by the ALJ. *See* 20 C.F.R. §§ 404.1527 and 416.927. A single omission might be harmless error, but a failure to address an entire line of medical evidence material to the disability determination is not. *See* Golembiewski v. Barnhart, 32 F.3d 912, 917 (7th Cir. 2003); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Drs. Baquero, Briselmeyer, Thompson, and Fisher were "acceptable medical sources" under 20 C.F.R. § 404.1513. Each expressed an opinion about the nature and severity of Ms. Adams' mental impairments, which might have affected the outcome.

Dr. Briselmeyer, a psychiatrist at Compass Health in Washington, treated Ms. Adams for major depression from January 21, 2003 to March 18, 2003. His initial evaluation in January 2003 indicated that Ms. Adams had experienced a series of traumatic events and was suffering from major depression.[2] Her Global

---

[2] Ms. Adams' ex-husband was murdered on April 13, 2002, a few days before they were to resume living together, the murder trial was pending and she was scheduled to be a witness for the state at the trial; a close friend committed suicide; and she'd lost her job.

5

Assessment of Functioning (GAF) score at the time was 50, indicating serious symptoms or impairment with social and occupational functioning. *See* American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 32 (4th Ed. Text Rev.2000). Dr. Briselmeyer prescribed anti-depressant medication and saw Ms. Adams at least four more times in February and March 2003. He noted that while she showed some improvement with medication, her mood remained low.

In a March 4, 2003 psychological evaluation, Brian Clark, a social worker at Compass Health, noted that Ms. Adams' problems began shortly after her ex-husband was murdered, and that she had an earlier psychiatric hospitalization in 2001. He indicated that Ms. Adams had severe social withdrawal, marked depressed mood, moderate motor agitation and retardation, and mild expression of anger, thought disorder, and hyperactivity. Mr. Clark also noted that Ms. Adams' ability to learn new tasks and to respond appropriately to and tolerate the pressures and expectations of a normal work setting were severely limited; that she had marked limitations in her ability to understand, remember and follow complex instructions, exercise judgment and make decisions, relate appropriately to co-workers and supervisors, interact appropriately in public contacts and control physical or motor movements and maintain appropriate behavior; and that

she had moderate limitations in her ability to understand, remember and follow simple instructions and perform routine tasks.[3]

Dr. Thompson, a psychiatrist, evaluated Ms. Adams in March 2003 to provide Medicaid certification, and opined that she suffered from post-traumatic stress disorder and major depression and showed moderate motor agitation and retardation, moderate to severe impairments of cognitive functioning, and mild to severe impairments of social functioning. Dr. Thompson concluded that Ms. Adams was acutely mentally ill, with an estimated duration of six to twenty-four months.

Dr. Robert Fisher, a psychologist, performed a mental status examination in July 2003 and diagnosed panic disorder with agoraphobia, dysthymic disorder, generalized anxiety disorder, post traumatic stress disorder, and social phobia. As to the severity of psychological stresses, Dr. Fisher opined that "difficulties are expected global with access to employment, health care, primary support and social group." Dr. Fisher approximated Ms. Adams' GAF at 40, indicating major impairment in several areas such as work, family, relations, and judgement. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Text Rev.2000).

From July 2003 through 2005, Ms. Adams continued to receive psychiatric treatment for post-traumatic stress disorder and recurrent major depression at

---

[3] The ALJ may consider evidence from "other sources," such as Mr. Clark, in assessing the severity of the claimant's impairments and how it affects his or her ability to work. 20 C.F.R. § 404.1513(d).

7

Grant-Blackford Mental Health Clinic, where she was under the care of Dr. Baquero, Dr. James Driver, Dr. Dennis Ugboma, and Don Anthony, a social worker. She was hospitalized for a second time in April 2005 for depression.

Dr. Ugboma completed a mental residual functional capacity questionnaire in June 2006, in which he opined that Ms. Adams had no useful ability to work in coordination with or proximity to others without being unduly distracted, or to complete a normal workday and workweek without interruption from psychologically based symptoms. Dr. Ugboma further opined that Ms. Adams couldn't meet competitive standards in any of the following areas: maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in the routine work setting; deal with normal work stress; and interact appropriately with the general public.

The ALJ didn't have the benefit of Dr. Ugboma's mental residual functional capacity assessment when he issued his opinion and can't be faulted for not considering it, but that assessment is consistent with the reports submitted by Drs. Briselmeyer, Baquero, Thompson, and Fisher — evidence that was before the

ALJ.[4] The ALJ made no reference whatsoever to the medical opinions offered by Dr. Briselmeyer, Dr. Thompson, and Dr. Fisher. While he acknowledged that Dr. Baquero had diagnosed Ms. Adams with post traumatic stress disorder and adjustment disorder on July 17, 2003, and had reported that her GAF score at the time was 50, that her lowest untreated score was 35, and that her highest score in the last year was 60, the ALJ gave no apparent weight to Dr. Baquero's opinion or to the GAF scores.

The GAF scores reported by Dr. Baquero, Dr. Briselmeyer, and Dr. Fisher indicated a range of functional limitations far greater than those identified in the ALJ's mental residual functional capacity finding. Social Security regulations don't require an ALJ to determine the extent of an individual's disability based solely on a GAF score, but the scores may assist in formulating the claimant's residual functional capacity. *See* Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir.2002). If the ALJ considered Ms. Adams' fluctuating scores and the opinions offered by Drs. Briselmeyer, Baquero, Thompson, and Fisher, it wasn't evident from his opinion.

---

[4] Under 42 U.S.C. § 405(g), a remand based upon supplementary evidence is appropriate only when the evidence is new, material, and there is good cause for the failure to produce the evidence before the ALJ. *See* Melkonyan v. Sullivan, 501 U.S. 89, 100-01 (1991). Dr. Ugboma's June 2006 mental residual functional capacity assessment is technically new and is definitely material, but Ms. Adams doesn't contend, nor does the record demonstrate, that good cause existed for failing to produce it at the administrative hearing. Dr. Ugboma's assessment, however, isn't the basis of the court's decision to remand — it merely corroborates evidence that was before the ALJ.

9

Whether Ms. Adams' mental impairments were of listing severity and whether they would have precluded all work activity is a question for the ALJ to determine on remand. Nothing in this order should be read to infer an outcome.

In light of the foregoing, the court needn't address Ms. Adams' additional arguments about the ALJ's alleged failure to obtain an updated medical expert opinion regarding medical equivalency under SSR 96-6p, or to consider side effects of her medication in deciding whether she was capable of performing work-related activity. Both issues can be addressed on remand.

Final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability is reserved to the Commissioner, 20 C.F.R. § 404.1527(3) and Social Security Ruling 96-5p, but the ALJ may not reject medical evidence without giving adequate reasons for doing so. Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000). An ALJ needn't discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), but can't simply ignore an entire line of evidence that is contrary to his decision. Golembiewski v. Barnhart, 32 F.3d 912, 917 (7th Cir. 2003); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). His decision must demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). It does not do so in Ms. Adams' case.

CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Health and Human Services is REVERSED and the matter REMANDED for rehearing.

SO ORDERED.

ENTERED:  May 15, 2009 

                                                  /s/ Robert L. Miller, Jr.  
                                                 Chief Judge  
                                                 United States District Court